# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| KIMBERLY SHIBLES, | |
| Plaintiff, | Civil No. 16-4357 (RMB/KMW) |
| v. | **OPINION** |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**BUMB**, United States District Judge:

Currently before the Court is a Motion to Dismiss by Defendant Bank of America, N.A. ("BANA") with regard to the Amended Complaint filed in this Court by Plaintiff Kimberly Shibles ("Plaintiff"). Mot. Dismiss [ECF No. 13]. The Court previously conducted a pre-motion conference on November 2, 2016 with regard to this motion. Minute Entry [ECF No. 11]. At that hearing, the Court made clear to the parties that it sought to resolve the procedural hurdles to the case prior to reaching the merits and, as such, ordered bifurcation of the motion to dismiss briefing, intending to first address BANA's threshold arguments. Text Order [ECF No. 12]. On May 31, 2017, the Court heard oral argument from the parties on the Motion to Dismiss the Amended Complaint. Having considered the parties'

contentions, the Court hereby GRANTS BANA's Motion to Dismiss in accordance with the analysis below.

## I. FACTUAL BACKGROUND

This case arises from the purchase of a property located at 910 Carol Avenue in Erma, New Jersey. Am. Compl. ¶ 36 [ECF NO. 5]. Plaintiff, who entered into a refinance mortgage loan agreement on the property, Id. ¶ 37, began having financial trouble in 2009 and called BANA to tell it she might default if she couldn't obtain loss mitigation assistance. Id. ¶ 39. Despite the hardship, Plaintiff did not default in 2009 and managed to make monthly payments on the property. Id. ¶ 39. In response to her request for assistance, Plaintiff was sent a Home Affordable Modification Program ("HAMP") Trial Modification Contract (the "TMC"). Id. ¶ 41 & Ex. 2.

Pursuant to the cover letter to that contract, Plaintiff, "[i]nstead of making [her] existing mortgage payment," was instructed to "make the new three-month trial period mortgage payment of $1,414.83," which was about $1100 less than her prior payment. Id. ¶ 39, 42. The TMC noted that if Plaintiff was in compliance with it, she would be entitled to a Home Affordable Modification Agreement that would amend and supplement the mortgage on her property due to her inability to make payments. Id. ¶ 43. Plaintiff signed the TMC and returned it to BANA. Id. ¶ 44. With an eye toward attaining such a permanent

modification, Plaintiff made three payments in April, May, and June of 2010 in the TMC's reduced amount.  Id. ¶ 52 & Ex. 4. After she did not receive a permanent modification contract at the end of that period, she continued to make the same reduced payment in July, August, September, October, November and December 2010, all the while awaiting a permanent modification contract's arrival.  Id. ¶ 42 & Ex. 5.  All told, Plaintiff made nine payments to BANA in the total amount of $12,733.47.

However, while Plaintiff did not receive the permanent modification contract during the period she was making these reduced payments, in the middle of that period, on August 25, 2010, BANA sent Plaintiff a letter titled Notice of Intention to Foreclose.  Id. ¶ 54.  As noted above, despite the letter, Plaintiff continued to make the above-described payments until December 2010.  In December 2010, Plaintiff received a letter stating that she had been denied permanent modification under HAMP because she "had not documented a financial hardship that ha[d] reduced [her] income or increased [her] expenses, thereby impacting your ability to pay your mortgage as agreed."  Id. ¶ 61. In applying for the permanent modification, however, Plaintiff alleges that she did, in fact, document her financial

hardships, Id. ¶ 49, and therefore Plaintiff contends that BANA's denial was based on false assertions. Id. ¶ 62.[1]

On October 3, 2013, BANA commenced a foreclosure action in New Jersey state court under Docket F-035282-13. Id. ¶ 63. Plaintiff did not appear at the action and BANA thus obtained a default judgment on March 5, 2014. Id. ¶ 64. Ultimately, in March 2016, after foreclosure and Sherriff's sale, Plaintiff was evicted from the property. Id. ¶ 66.

As part of her claims in this case, Plaintiff contends that BANA failed to apply the $12,733.47 in the manner required under the contract and pursuant to the Real Estate Settlement Procedures Act, and in so doing, BANA profited. Id. ¶ 67. Plaintiff additionally alleges that "[b]y avoiding a good faith review and consideration of Plaintiff's modification application, BANA avoided associated administrative costs and since BANA was the servicer, it collected penalties and fees and therefore disproportionally benefitted from foreclosure on Plaintiff's property." Id. ¶ 68. Ultimately, Plaintiff asserts claims for common law fraud, breach of contract and violation of the New Jersey Consumer Fraud Act. Am. Compl. ¶¶ 69-113.

---

[1] The Amended Complaint is commenced with many far-ranging allegations concerning BANA's improper use and abuse of the modification process for its own benefit, to the detriment of distressed homeowners. Am. Compl. ¶¶ 5-35. These allegations are fleshed out using declarations of former BANA employees concerning BANA's allegedly fraudulent modification programing.

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). BANA Br. at 6 [ECF No. 13-1].

## II. **LEGAL STANDARD**

Rule 12(b)(1) motions may challenge subject-matter jurisdiction based upon the complaint's face or its underlying facts. Pittman v. Metuchen Police Dept., No. 08-2373, 2009 WL 3207854, *1 (D.N.J. Sept. 29, 2009) (citing James Wm. Moore, 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007)). "A facial attack questions the sufficiency of the pleading, and in reviewing a facial attack, a trial court accepts the allegations in the complaint as true." Id.

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

5

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

### III. **ANALYSIS**

BANA raises three procedural hurdles to proceeding with the case in its Motion to Dismiss. First, BANA contends that the case is barred by the Rooker-Feldman Doctrine. Second, BANA contends that the Entire Controversy Doctrine prevents proceeding with the case. Third, BANA asserts that the case should be dismissed on Res Judicata grounds. The Court agrees with BANA as to the application of the Rooker-Feldman Doctrine

6

and Entire Controversy Doctrine, and therefore, GRANTS BANA's Motion to Dismiss.[2]

**A. *Rooker-Feldman* Doctrine**

Here, BANA's allegations concerning the Rooker-Feldman Doctrine amount to a facial attack to Plaintiff's claims.[3] Under the Rooker-Feldman Doctrine, United States District Courts lack subject matter jurisdiction to act as appellate courts from state court decisions. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Ordinarily, to prevail under the Doctrine: (1) the plaintiff in the federal action lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the judgment was entered before the federal action was filed; and (4) the plaintiff seeks federal review and rejection of the state judgment. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010). As the Third Circuit has held, "[t]he second and fourth requirements are key to determining whether a federal suit presents an independent, non-barred claim." Id.

---

[2] In light of this holding, the Court does not address BANA's Res Judicata argument.

[3] Plaintiff objected to certain documents being considered by the Court at the motion to dismiss stage, Pl.'s Br. 11, but seems to have conceded this Court's ability to consider them at oral argument. These documents are the underlying note, mortgage, and assignment documents. BANA Br. Exs. A-C. Regardless of Plaintiff's consent, the Court finds that the instant motion to dismiss can be resolved without consideration of these documents and does not reach the issue.

7

Here, with regard to the first requirement, BANA argues that Plaintiff lost in the state court by default. Indeed, the Amended Complaint clearly alleges this. Am. Compl. ¶ 64. BANA argues that the second requirement of the Rooker-Feldman doctrine is met because Plaintiff is functionally challenging the amount that was awarded to BANA. It argues that while Plaintiff carefully crafts her arguments to avoid impugning the final judgment of the foreclosure court, the reality of seeking the $12,733 – or any other relief Plaintiff might seek – is that it would require a determination by this Court that the state court was wrong to permit foreclosure. Third, BANA argues and Plaintiff does not dispute, that the foreclosure action resulted in a default judgment in March 2014, over two years before this action was filed. Fourth, allowing this Court to pursue the instant action would act as a review of the state court action in BANA's eyes because there would be no way to afford relief without undercutting the state court by ruling that the foreclosure was improper.

Plaintiff does not dispute these factors head on, but instead argues that because this issue wasn't litigated before the foreclosure court, the relevant question is whether the "federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." In re

8

Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (quotation omitted); but see Great Western Mining & Mineral Co., 615 F.3d at 170 n.4 (noting that the four-factor test governs and the phrase "inextricably intertwined" is a descriptor with no independent meaning). According to Plaintiff, "State and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or (2) when the federal court must take action that would render the state court's judgment ineffectual." ITT Corp. v. Intelnet Intern., 366 F.3d 205, 211 (3d Cir. 2004). Plaintiff argues that holding in a manner that is inconsistent with the state court is not the same as invalidating its ruling. Although the Court is persuaded by BANA's analysis of the Rooker-Feldman Doctrine, regardless which of the above considerations that must apply, the Court concludes that the Court does not possess subject matter jurisdiction to proceed.

In reaching its ruling, this Court is guided by three recent decisions in the arena of federal court actions predicated on bank conduct prior to state court foreclosure proceedings. See Monclova v. U.S. Bank NA, No. 16-3677, 2017 WL 118015 (3d Cir. Feb. 2, 2017) (per curiam)[4]; Gordon v. Bank of

---

[4] The Court is mindful of the fact that Monclova was not a disposition on the full Third Circuit.

9

America, Civ. No. 3:16-03093, 2017 WL 1377673 (D.N.J. Apr. 12, 2017)[5]; Ogbebor v. J.P. Morgan Chase, N.A., Civ. No. 16-3400(FLW)(DEA), 2017 WL 449596, at *11 (D.N.J. Feb. 2, 2017). All three of these decisions have determined that Rooker-Feldman or a preclusion doctrine applied in some material respect.

With regard to the Plaintiff's fraud claims, the Court finds that rendering a determination in this case would require this Court to review (and, if proven, ultimately invalidate) a state court determination as to foreclosure on issues that Plaintiff conceded at oral argument could have been raised and adjudicated as claims in the foreclosure proceeding.[6] In Gordon, which confronted a near-identical trial loan modification program also operated by BANA,[7] the court observed that "[t]o rule in Plaintiff's favor on her fraud claims, this Court would necessarily have to hold that [the trial modification agreement]

---

[5] Gordon is currently on appeal to the Third Circuit. Gordon v. Bank of America NA, et al., No. 17-2028 (May 10, 2017). Although the Court is persuaded by the legal outcome, it does note that Plaintiff contended at oral argument that Gordon and the instant case are factually distinct.

[6] In this regard, the Court is mindful that to the extent that Rooker-Feldman could conceivably not apply to the claims at issue because the Amended Complaint contains claims concerning harm caused by BANA and not the state-court judgment itself, these claims would be barred "by New Jersey's preclusion doctrines" because they could have been raised in the foreclosure proceedings. See infra (Entire Controversy Doctrine analysis)

[7] Indeed, the parties in Gordon were represented by the same counsel appearing before the Court in this action.

was invalid due to BANA's fraudulent inducement and that BANA lacked standing to foreclose on Plaintiff's property, thereby impermissibly negating the Superior Court's judgment." Gordon, 2017 WL 1377673, at *4. Likewise, the court in Ogbebor reached the same result. 2017 WL 449596, at *11. There, the court noted, "Plaintiffs allege that they entered into an agreement with [the defendant] modifying the terms and conditions of their mortgage on the Residential Property to restructure the mortgage so that Plaintiffs could afford to make payments; but, Chase proceeded to file a foreclosure action." Id. While the plaintiffs' claims in that case went "to great lengths to point out that the Complaint does not expressly seek an invalidation of the state court foreclosure proceedings," and related only to the defendants' conduct, the court held:

> [T]he gravamen of Counts One (breach of contract), Two (violation of the NJCFA) and Four (fraudulent misrepresentation) seek to attack the state court foreclosure judgment, since Plaintiffs are impliedly challenging the validity of the mortgage and right to foreclose on the Residential property.

Id. at *11.

The facts at issue in Gordon and Ogbebor are strikingly similar to those presented in this case. Plaintiff here alleges that BANA made a series of misrepresentations designed to lure Plaintiff into a loan modification program, while all the while planning (and succeeding in) a foreclosure action against her.

11

Like the Court in Ogbebor, this Court believes that – though Plaintiff has articulated her claims in a way suggestive of the fact that she is challenging BANA's misrepresentations or breach of contract – in reality, the Court is confronting an attack on the foreclosure on Plaintiff's property. This Court can conceptualize no way in which relief might be afforded in this case without review and rejection of the state court foreclosure action. At oral argument, this Court pressed counsel for Plaintiff as to the relief she was seeking: specifically, the question the Court posed was whether, in order for Plaintiff to prevail on her claims, there would have to be an ultimate finding that the foreclosure should never have happened. The Court was unpersuaded by Plaintiff's attempt to suggest anything but that result would follow in this litigation's wake if Plaintiff prevailed.

Accordingly, as remarked in Ogbebor, "Plaintiff[] ask[s] this Court to find that [the defendant] should not have been entitled to the foreclosure judgment in state court, because [the defendant] engaged in a pattern of fraud prior to that judgment." 2017 WL 449596, at *11. Likewise, with respect to Plaintiff's breach of contract action, "the breach of action claim presumes that the state court should not have entered a judgment of foreclosure, because Plaintiffs complain that the terms and conditions of the underlying mortgage were altered by

12

a subsequent loan modification agreement that occurred prior to the institution of the foreclosure complaint and entry of foreclosure judgment." Id. That request, both with regard to the NJCFA and common law fraud causes of action Plaintiff now brings, should be and is barred by Rooker-Feldman. The same is true for the breach of contract cause of action.

### B. Entire Controversy Doctrine

The Entire Controversy Doctrine in New Jersey "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015). In the foreclosure context, the Entire Controversy Doctrine applies only to "germane" claims, which are "claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." In re Mullarkey, 536 F.3d 215, 229-230 (3d Cir. 2008); see also Martinez v. Bank of America, N.A., 664 F. App'x 250, 254 (3d Cir. 2016) (per curiam) (holding that ECD precluded raising claims that were based on allegations "identical to that presented in support of his counterclaims and cross-claims in the foreclosure case.").

In the context of the Entire Controversy Doctrine and foreclosure actions, BANA notes that "the Appellate Division has been 'clear that any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure." Zebrowski v. Wells Fargo Bank, N.A., No. 1:07-cv-05236, 2010 WL 2595237, at *6-7 (D.N.J. June 21, 2010) (citation omitted).

Plaintiff retorts that this issue was resolved by Genid v. J.P. Morgan Chase, A-2570-14T2 (N.J. App. Div. Dec. 12, 2016), in which the New Jersey Appellate Division ruled that "[T]he parties do not cite any reported cases in which the entire controversy doctrine and Rule 4:64-5 were used to preclude a foreclosure defendant from bringing an arguably germane counterclaim in a separate suit at a later time . . . . Nothing in Rule 4:64-5 mandates that all germane counterclaims must be brought in the foreclosure action." Id. at *4. The Court is not persuaded by the analysis in Genid, which is not binding upon this Court and stands in direct opposition to the more persuasively reasoned Ogbebor, 2017 WL 449596, at *10 (D.N.J. Feb. 2, 2017) ("Nevertheless, this Court need not weigh in on that issue because, even if Counts One, Two and Four are not barred by the Rooker-Feldman doctrine, they are barred by the

14

entire controversy doctrine, "New Jersey's preclusion doctrine[.]").[8]

Accordingly, to the extent that Rooker-Feldman does not bar this action, the Court also rules that this action is barred on the independent grounding of the New Jersey Entire Controversy Doctrine.

## IV. CONCLUSION

Having considered the parties' contentions, both as set forth in their papers and at oral argument, the Court rules that BANA's Motion to Dismiss is GRANTED as to Plaintiff's Amended Complaint.

DATED: June 5, 2017

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff additionally relies upon Sarlo v. Wells Fargo, N.A., Civ. No. 12-5522 (JBS/KMW), 175 F. Supp. 3d 412 (D.N.J. 2015), which ruled that certain breach of contract claims and fraud claims were not germane to foreclosure proceedings. Id. at 421. The Court is unpersuaded by the applicability of that case to this one, where "Plaintiffs' claims in th[at] suit—and the asserted damages arising out of the failure to provide a loan modification—have little to do with the enforceability of the 2003 mortgage contract." Id. Here, the Court determines, based upon the allegations presented in the Amended Complaint, that the Plaintiff's claims have much to do with the enforceability of the underlying mortgage contract.

15